IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA T.,[1]

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,[2]

        Defendant.

Civ. No. 1:17-cv-00912-MC

**OPINION & ORDER**

McSHANE, District Judge:

Plaintiff Patricia T. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") finding Plaintiff no longer disabled. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

On January 2, 2009, Plaintiff was found to be disabled as of January 11, 2008. Tr. 18. On February 11, 2013, the Commissioner determined that Plaintiff was no longer disabled as of February 1, 2013. *Id.* The determination was upheld upon reconsideration and Plaintiff sought a hearing before an Administrative Law Judge ("ALJ"). *Id.* On December 10, 2015, Plaintiff appeared at a video conference hearing before an ALJ. *Id.*

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration (SSA) is "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court therefore refers to Defendant as Commissioner of Social Security.

On January 29, 2016, the ALJ determined that Plaintiff was no longer disabled as of February 1, 2013. Tr. 30. The Appeals Council denied Plaintiff's request for review, Tr. 1, making the ALJ's determination the final decision of the Commissioner. This appeal followed.

## CONTINUING DISABILITY ANALYSIS

Regulations governing the handling of social security benefit determinations identify two separate standards: one to be employed in making an initial disability determination, 20 C.F.R. § 416.920, and the second for assessing whether a previously determined disability continues, 20 C.F.R. § 416.994(b)(5)(i-vii). *Khampunbuan v. Astrue*, 333 F. App'x 217, 218 (9th Cir. 2009). In assessing whether a disability continues, the Commissioner follows a seven-step sequential analysis.

A step one, the Commissioner must determine if the individual has an impairment or combination of impairments that meets or equals a listed impairment. 20 C.F.R. § 416.994(b)(5)(i). If the claimant has such an impairment, her disability continues. *Id.*

At step two, the Commissioner must determine whether medical improvement has occurred. 20 C.F.R. § 416.994(b)(5)(ii). If there has been medical improvement, the analysis proceeds to the third step; if not, the analysis skips to the fourth step. *Id.*

If there has been medical improvement, the third step requires the Commissioner to determine whether medical improvement is related to the ability to work. 20 C.F.R. § 416.994(b)(5)(iii). This involves assessing whether the claimant's residual functional capacity ("RFC") has increased. *Id.* If the medical improvement is not related to the ability to do work, the analysis proceeds to step four; if it is related to the ability to do work, it proceeds to step five. *Id.*

If there is no medical improvement, or the improvement is not related to the claimant's ability to do work, the fourth step requires the Commissioner to determine if an exception applies. 20 C.F.R. § 416.994(b)(5)(iv). Under the first group of exceptions, the Commissioner can find the claimant no longer disabled even though she has not medically improved if she is able to engage in substantial gainful activity. 20 C.F.R. § 416.994(b)(3). If one of those exceptions applies, the analysis proceeds to step five. 20 C.F.R. § 416.994(b)(5)(iv). Under the second group of exceptions, in certain situations not applicable here, the Commissioner can find a recipient no longer disabled without finding medical improvement or an ability to engage in substantial gainful activity. 20 C.F.R. § 416.994(b)(4). If none of the exceptions apply, the recipient continues to be disabled. 20 C.F.R. § 416.994(b)(5)(iv).

The fifth step requires the Commissioner to determine whether all the recipient's current impairments in combination are "severe," which means they significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 416.994(b)(5)(v). If not, the claimant is no longer disabled. *Id.*

If the claimant's current impairments are severe, the sixth step requires the Commissioner to determine whether the claimant has a sufficient RFC, "based on all [her] current impairments," to perform any past relevant work. 20 C.F.R. § 416.994(b)(5)(vi). If so, she is no longer disabled. *Id.*

If the claimant is unable to do her past work, the seventh step requires the Commissioner to determine, using the claimant's RFC, whether the claimant can perform any other substantial gainful work. 20 C.F.R. § 416.994(b)(5)(vii). If not, the claimant continues to be disabled. *Id.*

# THE ALJ'S FINDINGS

The ALJ noted the most recent favorable medical decision finding Plaintiff disabled, dated January 2, 2009, which served as the "comparison point decision." ("CPD"). Tr. 19. At the time of the CPD, Plaintiff had the following medically determinable impairment: third ventricular colloid cyst with obstructive hydrocephalus. *Id.* This resulted in an RFC restricting Plaintiff to occasional and frequent lifting and carrying of less than ten pounds; standing or walking for less than two hours in an eight hour workday; sitting for six hours in an eight hour workday; never climbing ramps, stairs, ladders, ropes, or scaffolds; never balancing, stooping, kneeling, crouching, or crawling; avoiding all exposures to extreme cold, extreme heat, or hazards; avoiding even moderate exposure to noise; and avoiding concentrated exposure to wetness or humidity. Tr. 19-20.

Plaintiff underwent a series of surgeries to remove the colloidal cyst and install a ventriculoperitoneal shunt. Tr. 20. The ALJ determined that, as of February 1, 2013, Plaintiff had the following current medically determinable impairments: residual effects of colloidal cyst and obstructive hydrocephalus (status post-excision and subsequent ventriculoperitoneal shunt placement); cognitive disorder; depressive disorder; and anxiety disorder. *Id.*

The ALJ determined that Plaintiff had the RFC to perform light work with the following additional restrictions: Plaintiff is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, crouching, and crawling; Plaintiff must avoid moderate exposure to operational control of moving machinery, unprotected heights, and hazardous machinery; Plaintiff is limited to work that is simple, routine, and repetitive; and no more than occasional interaction with the general public or coworkers. Tr. 23.

The ALJ then undertook the sequential analysis. At step one, the ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment. Tr. 20. At step two, the ALJ determined that medical improvement had occurred as of February 1, 2013, and that the impairment established in the CPD was no longer present. Tr. 22. At step three, the ALJ determined that Plaintiff's medical improvement was related to Plaintiff's ability to work. *Id.* Consequently, the ALJ skipped step four and proceeded to step five, determining that Plaintiff has continued to have a severe impairment or combination of impairments. Tr. 22-23.

The ALJ determined at step six that Plaintiff did not have the RFC to perform her past relevant work. Tr. 28-29. At step seven, the ALJ determined that Plaintiff was able to perform other substantial gainful work as a mailroom sorter, light package router, or office helper. Tr. 29-30. Accordingly, the ALJ determined that Plaintiff's disability ended on February 1, 2013. Tr. 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting the medical opinion of a state agency reviewing psychologist; (2) improperly rejecting Plaintiff's subjective symptom testimony; (3) improperly rejecting lay witness testimony; and (4) providing a legally insufficient hypothetical to the testifying vocational expert ("VE").

### I. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by rejecting portions of the medical opinion of state agency reviewing psychologist Joshua Boyd, Psy.D, when he excluded Dr. Boyd's opinion that Plaintiff would need an "understanding supervisor" from the RFC and the VE hypothetical. The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); *Baxla v. Colvin*, 671 F. App'x 477, 479 (9th Cir. 2016).

On February 7, 2013, Dr. Boyd submitted a report based on his review of Plaintiff's medical records. Tr. 748-64. Dr. Boyd noted that Plaintiff displayed memory impairment and had a medically determinable cognitive disorder, as well as depressive disorder and anxiety

disorder. Tr. 749, 751, 753. Dr. Boyd completed a Mental Residual Functional Capacity Assessment Tr. 762-64. In the narrative summary of his conclusions, Dr. Boyd opined that Plaintiff "[w]ill need an understanding supervisor." Tr. 764.

The ALJ found that most of the limitations identified in Dr. Boyd's assessment were "reasonably consistent with the evidence in terms of claimant's cognitive and social functioning," and gave the majority of Dr. Boyd's opinion "great weight." Tr. 27-28. However, the ALJ determined that

> [T]he requirement for "an understanding supervisor" is not a proper limitation that can be reasonably addressed by a vocational expert. The Dictionary of Occupational Titles (DOT) does not include a description of work which includes an "understanding" supervisor. Nor am I aware of a study or publication of work that a vocational expert could rely upon in determining how such a requirement would affect the job base. Consequently, I find this limitation specious and give it no weight.

Tr. 27.

Plaintiff argues that the ALJ erred in excluding the need for an "understanding supervisor" from the VE hypothetical. Plaintiff interprets that limitation as indicating that Plaintiff would need instructions repeated several times and suggests that Plaintiff would require a sheltered work environment. At the hearing, the VE testified that if an individual needed re-instruction or re-demonstration of a position's duties on a daily basis or more than once per day, then they are not capable of performing competitive work. Tr. 67.

This is not an issue of first impression in the District of Oregon. In *Garifalakis v. Berryhill*, 3:16-cv-0105-BR, 2017 WL 2608542 (D. Or. June 15, 2017), the court confronted an identical non-examining psychologist opinion.[3] *Id.* at *10. As in the present case, the ALJ concluded that the need for an "understanding supervisor" was not a functional limitation and

---

[3] Coincidentally, the disputed opinion in *Garifalakis v. Berryhill* was also rendered by Dr. Boyd. *Garifalakis v. Berryhill*, 3:16-cv-01051-BR, 2017 WL 2608542, at *10 (D. Or. June 15, 2017).

Page 7 – OPINION & ORDER

disregarded that portion of the psychologists' opinions, while otherwise giving the opinions substantial weight. *Id.* The court held that

> The ALJ was correct that the "understanding supervisor" comment in the opinions of Drs. Boyd and Anderson is unlike the social functional limitations contained in an assessment of a claimant's RFC because it does not address the extent or nature of interaction with a supervisor, but instead applies only to the personal attributes of a potential supervisor. The ALJ found this to be ill-suited to the inherently quantitative analysis of a claimant's RFC as well as to the analysis at Step Five of the sequential evaluation.

*Id.*

Similarly, in *Jackson v. Colvin*, Civil No. 1:13-CV-01314-KI, 2014 WL 5148438 (D. Or. Oct. 14, 2014), the court affirmed an ALJ's decision to disregard a medical opinion indicating that the claimant would need an "understanding supervisor." *Id.* at *8. The court found that such a limitation was "too vague" and left the ALJ with "no way to tell what type of understanding the supervisor would need to possess." *Id.* The court concluded that the physician's observation did not constitute a functional assessment of a work limitation. *Id.*

The Court finds the holdings of *Garifalakis* and *Jackson* to be persuasive. The need for an "understanding supervisor" is not a proper functional assessment of a work limitation. It is simply too vague and unquantifiable to incorporate into the claimant's RFC or into a VE hypothetical. Although Plaintiff suggests her own interpretation of what an "understanding supervisor" is, the Court must defer to the ALJ rational interpretation. *Batson*, 359 F.3d at 1198. The Court therefore concludes that the ALJ did not err by excluding Dr. Boyd's opinion concerning the need for an "understanding supervisor" from the RFC and the VE hypothetical.

## II. Plaintiff's Subjective Symptom Testimony

Plaintiff asserts that the ALJ failed to give clear and convincing reasons for rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ

must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

As previously noted, Plaintiff underwent surgery to remove the cyst from her brain. Plaintiff testified that she continues to have major issues with her balance, equilibrium, and memory. Tr. 48. Plaintiff testified that she shops at night to avoid crowds. Tr. 55. She testifies that she falls down, although she was not able to say how often or how recently. Tr. 50-51, 55. She has difficulty sleeping since the surgery and generally will "cat nap all day and all night because [she] can't sleep through the night." Tr. 55.

In this case, the ALJ identified several bases for discounting Plaintiff's subjective symptom testimony. First, the ALJ observed that the limitations claimed by Plaintiff were not consistent with the objective medical evidence and noted a lack of significant medical findings with respect to Plaintiff's claimed limitations. Tr. 24-25. It is proper for the ALJ to consider the

objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009).

As noted, Plaintiff complains of dizziness and equilibrium issues. Plaintiff underwent a comprehensive neurological examination on February 2, 2013. Tr. 744-47. The exam was "completely normal," and Plaintiff scored 29/30 on a Mini-Mental status exam. Tr. 745-46. Romberg and Dix-Hallpike tests for balance and vertigo issues were both negative. Tr. 746. An examination in December 2014 found that Plaintiff had "clearly improved," and noted a normal gait. Tr. 806. Although Plaintiff reported dizziness, "she has not had any falls." Tr. 805. An MRI on February 23, 2015, found "no evidence of hydrocephalus" and "no obvious problems." Tr. 803. Although Plaintiff reported falling regularly, the ALJ found no medical reports showing treatment for fall-related injuries after February 1, 2013.[4] Tr. 25.

The Court concludes that the ALJ reasonably assessed Plaintiff's credibility with respect to the objective medical evidence.

Next, Plaintiff's medical records indicated "only sporadic treatment" for the alleged impairments. Tr. 24. An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in assessing a claimant's credibility. *Molina*, 674 F.3d at 1112 (internal quotation marks and citation omitted). At the

---

[4] Plaintiff was seen for a fall-related injury in January 2013, however. Tr. 818. Additionally, Plaintiff "banged [her] toe" shortly before the hearing and had x-rays taken to determine whether or not the toe was broken. Tr. 51. It was ultimately determined that the toe was not broken. *Id.*

hearing, Plaintiff testified that she was not currently receiving any treatment for her condition, despite the alleged severity of her impairments. Tr. 45. The ALJ noted that Plaintiff sought treatment for symptoms related to her brain surgery only twice in the period after February 1, 2013. Tr. 25, 803, 805. Nor does it appear that Plaintiff ever sought treatment for her mental impairments. Tr. 25-26.

Plaintiff complained of headaches, which she told her physicians were worse since the brain surgery. Tr. 805. Plaintiff was prescribed Percocet for her headaches and reported that "it is the only thing that will wipe out my headache." Tr. 94. Plaintiff reported that she takes Percocet for the headaches two or three days per week. *Id.* Despite its reported effectiveness in treating her headache symptoms, however, Plaintiff's urinary drug tests were negative for Percocet. Tr. 730. The negative result led Plaintiff's physician to discontinue the prescription. *Id.*

Plaintiff argues that she did not seek treatment because her medical condition was not expected to improve, although this is not consistent with medical reports indicating "clear" improvement after Plaintiff's surgery. Tr. 806. Plaintiff also argues that her failure to seek medical treatment is related to her mental impairments, but the Court concludes that the ALJ's interpretation of the record is rational and entitled to deference. The ALJ also reasonably considered Plaintiff's inadequate explanation for her failure to use Percocet as prescribed in assessing Plaintiff's credibility.

Finally, the ALJ noted that Plaintiff was not forthcoming regarding her use of marijuana and alcohol.[5] Tr. 26-27. Plaintiff testified that she does not consume alcohol. Tr. 49. In her

---

[5] At the hearing, Plaintiff testified that she uses marijuana to help her sleep. Tr. 48. It appears that there may have been some confusion concerning whether or not Plaintiff had a medical marijuana card and what Plaintiff's treatment provider's policies were with respect to medical marijuana and prescriptions for controlled substances. Tr.

medical examination, Plaintiff reported that her last use of alcohol was twenty-five years earlier. Tr. 737. In 2011, however, Plaintiff told her physician that she drank alcohol. Tr. 718. Although this strikes the Court as a relatively minor inconsistency, the ALJ is permitted to consider such evidence in assessing a claimant's credibility.

On this record, the Court concludes that the ALJ did not err in assessing Plaintiff's credibility when considering her subjective symptom testimony.

### III. Lay Witness Testimony

Plaintiff asserts that the ALJ erred by rejecting the lay witness statement provided by Plaintiff's father, Albert T. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. "When an ALJ discounts the testimony of a lay witness, he or she must give reasons that are germane to each witness." *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks, alterations, and citation omitted).

In this case, Albert T. submitted a lay witness statement as part of the cessation proceedings. Tr. 97-98. Albert T. reported that Plaintiff is "better now, but I don't think she could retain enough information to work a full day unless it's a repetitive job, like an assembly line[.]" Tr. 97. Albert T. reported that Plaintiff sometimes pauses during conversations and "has to remember what we were talking about," although Albert T. hasn't "notice[d] any other problems with her memory. Tr. 97-98. Albert T. doesn't physically help Plaintiff and reports that she can "kind of" manage her own finances. Tr. 98. He reported that Plaintiff "does fine with people" and "does a pretty good job" taking care of her household. *Id.* In physical terms, Albert T. reported that Plaintiff "tells me she has a constant headache and can't get a doctor to

---

710, 718-19. The Commissioner concedes that Plaintiff was a medical marijuana cardholder and so the Court will assume that Plaintiff's treatment providers erred in characterizing her marijuana usage as illicit.

give her any medication for it," and that she "has to go to sleep for an hour or two to get rid of the headache." *Id.*

Albert T. also submitted a Third Party Function Report questionnaire in November 2012. Tr. 393-400. In it, he reports that Plaintiff is "unable to focus for long periods of time" and "sleeps in naps." Tr. 393-94. He also reported that Plaintiff was able to care for herself and her household, drive, go shopping, and manage her finances Tr. 394-96. He reported that Plaintiff needs someone to accompany her "at times." Tr. 397. Although Albert T. indicated that Plaintiff has problems with memory and concentration and that she does not handle stress well, he also reported that she follows written and spoken instructions well. Tr. 398-99.

The ALJ concluded that Albert T.'s "statements regarding the claimant's activities of daily living suggest she is capable of at least simple tasks." Tr. 28. Although the ALJ did not consider Albert T.'s statements as supporting a finding of disability, he found that they "do support the finding that the claimant does indeed experience significant, if not disabling, cognitive limitations." *Id.* Accordingly, the ALJ found them "somewhat persuasive in terms of identifying areas in which the claimant experiences limitations." *Id.*

Contrary to Plaintiff's argument, the ALJ did not disregard Albert T.'s lay witness statements. As discussed above, Albert T. did not opine that Plaintiff was unable to work, but rather that she would be unable to work a full day unless it was a repetitive job, like an assembly line. The ALJ incorporated that opinion, as well as the other limitations discussed by Albert T. into Plaintiff's RFC. On this record, the Court concludes that the ALJ appropriately considered the lay witness testimony.

## IV. VE Hypothetical

Plaintiff asserts that the ALJ erred by failing to incorporate Dr. Boyd's opinion concerning Plaintiff's ability to follow detailed instructions into his VE hypothetical and that the VE's opinion concerning Plaintiff's ability to perform the jobs identified at step seven was therefore in error. Dr. Boyd opined that Plaintiff "[i]s capable of understanding and remembering very short and simple instructions, not detailed instructions due to cognitive impairment" and "[c]an do simple, routine type work." Tr. 764. Dr. Boyd believed that Plaintiff was "[c]apable of carrying out short and simple instructions," and "although [she] could carry out detailed instructions," she "would not be able to consistently complete them [due to] cognitive impairment and interference from depression and anxiety [symptoms]." *Id.* The ALJ gave this portion of Dr. Boyd's opinion "great weight." Tr. 28.

At the hearing, the ALJ incorporated the limitation into a restriction to "work that is simple, routine and repetitive." Tr. 63. Based on that hypothetical, the VE testified that such a person would be able to work as a mail room sorter, light packing router, and office helper. Tr. 63-64. The ALJ accepted the VE's testimony and included those positions in his step seven findings. Tr. 30. Plaintiff asserts that the identified positions are not consistent with the limitations identified by Dr. Boyd because they require the ability to follow detailed instructions and are not simple, routine work. The Commissioner concedes that the mail sorter position was not properly included and so the Court confines its discussion to the office helper and router positions.

This issue focuses on the General Educational Development ("GED") levels of the identified positions. GED levels are "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance." Dictionary of Occupational Titles ("DOT"), App.

C, § 3, *available at* 1991 WL 688702. GED levels include the reasoning ability required to perform the job and range from Reasoning Level One to Level Six. *Bowman v. Colvin*, 228 F. Supp.3d 1121, 1139-40 (D. Or. 2017). Both routing clerk, DOT 222.687-022, *available at* 1991 WL 672133, and office helper, DOT 239.567-010, *available at* 1991 WL 672232, require GED Reasoning Level Two. At Reasoning Level Two, the individual must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT 222.687-022, *available at* 1991 WL 672133; DOT 239.567-010, *available at* 1991 WL 672232.

Plaintiff contends that a position requiring the claimant to "carry out detailed but uninvolved written or oral instructions" is inconsistent with Dr. Boyd's opinion that Plaintiff was "capable of understanding and remembering very short and simple instructions, not detailed instructions." Plaintiff relies on *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015) and *Rounds v. Comm'r*, 807 F.3d 996 (9th Cir. 2015), but both cases are distinguishable. In *Zavalin*, the Ninth Circuit found an apparent conflict between an RFC limitation of "simple, repetitive tasks" and Reasoning Level 3, *Zavalin*, 778 F.3d at 846-47, while in *Rounds*, the Ninth Circuit found a conflict between an RFC limiting the claimant to "one- and two-step tasks" and the demands of Reasoning Level 2. *Rounds*, 807 F.3d at 1003-04. In this case, both of the disputed positions require Reasoning Level 2. Furthermore, Plaintiff is not limited to "one- and two-step tasks."

The resolution of this issue turns on the meaning of "detailed but uninvolved" as it is used in the DOT. "The Social Security Regulations separate a claimant's ability to understand and remember thing and to concentrate into 'short and simple instructions' and 'detailed' or 'complex' instructions, 20 C.F.R. § 416.969a(c)(1)(iii), while the DOT uses a graduated and

'finely tuned' scale." *Smith v. Colvin*, Civ. No. 3:14-cv-01210-PA, 2016 WL 680535, at *11 (D. Or. Feb. 19, 2016) (quoting *Meissi v. Barnhart*, 403 F. Supp.2d 981, 984 (C.D. Cal. 2005)). "Courts should not confuse the Social Security regulation's use of 'detailed' in describing instructions, with the 'detailed' instructions as described in the DOT." *Id.* Judge Hernandez addressed this issue in a recent opinion:

> In the [DOT] definition, the word "detailed" is modified with the words "but uninvolved." The dictionary meaning of "involved" is "complicated." Furthermore, the definition of "complicated" is "not simple." Thus, "uninvolved" means "simple." The modifier "but uninvolved" must be considered when interpreting the definition of Level 2 reasoning. Considering the entire phrase, "detailed but uninvolved," this Court finds that while the instructions may be detailed, they may also be simple. A task that includes "detailed but uninvolved" instructions may consist of a number of steps, none of which are complex. Without the express limitation to "one or two" steps or instructions, there is no limitation to Level 1. Therefore a plaintiff who is limited to "short, simple instructions" is capable of performing a job requiring Level 2 reasoning.

*Cortez v. Comm'r*, No. 6:17-cv-00194-HZ, 2018 WL 1173423, at *4 (D. Or. Mar. 3, 2018) (quoting *Patton v. Astrue*, No. 6:11-CV-06423-ST, 2013 WL 705909, at *1 (D. Or. Feb. 25, 2013), internal citations and alterations omitted); *see also Smith*, 2016 WL 680535, at *12 (finding that a limitation to "simple, not detailed instructions, and routine, not complex tasks" was consistent with a GED Reasoning Level of One or Two). The Court concludes that the ALJ did not err in finding the limitations assessed by Dr. Boyd concerning detailed instructions to be consistent with positions requiring Reasoning Level Two.

With respect to the second limitation assessed by Dr. Boyd, courts in this District have consistently held that the ability to do "simple, routine tasks" is consistent with Reasoning Level Two. *See, e.g., Goodwin v. Comm'r*, Case No. 3:15-cv-02115-SU, 2017 WL 1383470, at *4 (D. Or. March 28, 2017) (so holding and collecting cases); *see also Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of doing

work requiring more rigor and sophistication [than Level 1 jobs]—in other words, Reasoning Level 2 jobs."). The Court finds these opinions persuasive and concludes that the ALJ did not err in formulating the VE hypothetical or in relying on the VE's testimony at step seven of the analysis.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 25th day of September, 2018.

s/Michael J. McShane<br>
MICHAEL McSHANE<br>
United States District Judge